Michael DeLaMATER, Appellee,

v.

MARION CIVIL SERVICE COMMISSION and City of Marion, Appellants.

No. 95–1650.

Supreme Court of Iowa.

Oct. 23, 1996.

Jay H. Honohan of Honohan, Epley, Braddock & Brenneman, Iowa City, for appellant Marion Civil Service Commission.

Donald C. Hoskins, City Attorney, for appellant City of Marion.

William H. Roemerman of Crawford, Sullivan, Read, Roemerman & Brady, P.C., Cedar Rapids, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

TERNUS, Justice.

Appellee, Michael DeLaMater, requested the opportunity to review and copy the scores of individuals who took two promotional examinations given by the appellant, Marion Civil Service Commission, as well as the grading scales for the examinations. When DeLaMater's request was denied, he brought this action pursuant to Iowa's open records law, Iowa Code chapter 22 (1995), against the appellant, City of Marion, and its civil service commission. The

district court granted DeLaMater's motion for summary judgment, ordering the disclosure of "the raw scores and the grading scale." The City and the Commission appeal. We affirm as modified.

## I. *Standard of Review.*

We review an order of summary judgment for correction of errors of law. *Gabrilson v. Flynn,* 554 N.W.2d 267, 270 (Iowa 1996). The movant must show there is no genuine issue of material fact and he is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c). In reviewing the record, we consider the evidence in the light most favorable to the party opposing the motion for summary judgment. *C–Thru Container Corp. v. Midland Mfg. Co.,* 533 N.W.2d 542, 544 (Iowa 1995).

## II. *Background Facts and Proceedings.*

The following facts are undisputed. DeLaMater is a police officer employed by the City. In 1991 and again in 1993, he took civil service examinations given by the Commission for the purpose of considering candidates for promotion to the rank of lieutenant. In both years, DeLaMater was placed on the civil service certified eligible promotional list; he was first on the list in 1993. Nevertheless, DeLaMater was not promoted.

DeLaMater began to suspect the Commission was not following its own rules in establishing the promotional lists. Therefore, pursuant to Iowa Code chapter 22, he asked to review the raw scores of each person who took the examination and the grading scales used by the Commission in scoring the examinations. *See* Iowa Code §§ 22.2, .7 (with certain exceptions for confidential records, every person has the right to examine and copy public records). When DeLaMater's request was denied, he filed this action. *See id.* § 22.10 (any aggrieved person may seek judicial enforcement of the requirements of chapter 22). The City and Commission did not dispute that the information DeLaMater

requested constituted public records. *See id.* § 22.1(3) (defining "public records" in part as "all records ... of or belonging to this state or any ... political subdivision"). They contended, however, that the records fell within three exceptions to the disclosure requirement: (1) the documents were protected trade secrets within the meaning of section 22.7(3); (2) the information requested was "[p]ersonal information in confidential personnel records" within the meaning of section 22.7(11); and (3) the request required disclosure of examinations, which disclosure would interfere with the validity of the examinations within the meaning of section 22.7(19).[1] The district court rejected these arguments and granted DeLaMater's motion for summary judgment requiring disclosure of the requested information. This appeal followed.

Before we consider the merits of the issues raised by the defendants, we pause to clarify the precise nature of the documents requested because there has been some confusion between the parties on this count. DeLaMater does not want the test questions nor does he want the answer key, i.e., the set of answers to the questions. DeLaMater wants the grading scale, which he defines as the maximum possible score for each portion of the exam, and the raw scores of each examinee on each component of the promotional examination.

The reason for the limited nature of DeLaMater's request becomes apparent upon review of the manner in which the test is graded and scored. The promotional examination consists of two written tests, an oral examination, and promotional points awarded for years of service and education. One of the written examinations is general in nature and the second is based on the duty manual. Only persons passing the written examinations are allowed to complete the remainder of the promotional testing.

To pass the written examination, one must have a minimum score of seventy percent of

---

1. The defendants did not rely on Iowa Code § 22.7(18) exempting from disclosure communications made to a governmental body to the extent disclosure would discourage such communications. *See City of Sioux City v. Greater Sioux City Press Club,* 421 N.W.2d 895, 898 (Iowa 1988) (holding employment applications are exempt from disclosure under this statute). Nor did the defendants seek injunctive relief under Iowa Code § 22.8(1). Therefore, we express no opinion on the applicability of these provisions.

the highest score of those taking the test. DeLaMater suspects that persons not achieving this minimum score are being placed on the promotional lists. Consequently, he wants to know the maximum possible points permitted for each part of the examination, as well as the raw scores of each person taking the test. We conclude he is entitled to this information.

### III. *Governing Legal Principles.*

■■■ This case requires us to interpret and apply statutory exceptions to the general rule requiring disclosure of public records. Our interpretation of these exceptions depends solely on legislative intent. *City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895, 897 (Iowa 1988). In prior cases considering the scope of the confidentiality exceptions, we have said "the legislature intended for the disclosure requirement to be interpreted broadly, and for the confidentiality exception to be interpreted narrowly." *In re Des Moines Indep. Community Sch. Dist. Pub. Records*, 487 N.W.2d 666, 669 (Iowa 1992); *accord City of Dubuque v. Telegraph Herald, Inc.*, 297 N.W.2d 523, 527 (Iowa 1980). Nevertheless, where the legislature has used broadly inclusive language in the exception, we do not mechanically apply the narrow-construction rule; instead, we give effect to the legislative purpose underlying the exception. *Gabrilson*, 554 N.W.2d at 271; *City of Sioux City*, 421 N.W.2d at 897. The defendants bear the burden to demonstrate the applicability of an exemption.

■■■ Our review of the district court's interpretation of section 22.7 is at law. *US West Communications, Inc. v. Office of Consumer Advocate*, 498 N.W.2d 711, 713 (Iowa 1993). Our review of the district court's application of section 22.7 to the undisputed facts shown in the record before it is de novo. *Northeast Council on Substance Abuse, Inc. v. Iowa Dep't of Pub. Health*, 513 N.W.2d 757, 759 (Iowa 1994).

2. The defendants do not argue the grading scale is a personal record within the meaning of this

### IV. *Trade Secret Exemption.*

· Iowa Code section 22.7(3) requires that "[t]rade secrets which are recognized and protected as such by law" must be kept confidential. The defendants do not seriously contend the raw scores and the grading scale are trade secrets. We agree that they are not. Nevertheless, the defendants fear DeLaMater needs the test questions and answer keys to meaningfully review the validity of the Commission's grading process. Therefore, they request a ruling that these materials are trade secrets. Because DeLaMater is not seeking the examinations and answer keys, this issue is not before us and we do not address it.

### V. *Personal Information Exemption.*

Iowa Code section 22.7(11) provides that "[p]ersonal information in confidential personnel records of public bodies" is not subject to disclosure under the public records law. The defendants claim the raw scores of other applicants fall within this exemption.[2]

Most states have a privacy exemption in their open records or freedom of information laws. *See* Andrea G. Nadel, Annotation, *What Constitutes Personal Matters Exempt from Disclosure by Invasion of Privacy Exemption Under State Freedom of Information Act*, 26 A.L.R.4th 666, 670 (1983) [hereinafter "Nadel Annotation"]. These exemptions are often patterned after the federal Freedom of Information Act's privacy exemption for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *See id.* n. 5; 5 U.S.C. § 552(b)(6) (1995). In applying the federal statute, federal courts balance the public interests served by disclosure against the private interest in protecting against invasions of privacy. *City of Dubuque*, 297 N.W.2d at 527.

The use of a balancing test in construing privacy exemptions under public records laws is common:

exemption.

[T]he courts will usually first examine the specific statutory provision involved to see if the statute delineates exactly what types of records or other information are considered private and thus subject to the public disclosure exemption. If, however, the particular record, report, or other information sought to be disclosed is not specifically listed in the personal privacy provision as a personal matter, or if the provision does not define those matters, the disclosure of which would constitute an invasion of personal privacy, the courts most often will apply general privacy principles, which examination involves a balancing of conflicting interests—the interest of the individual in privacy on the one hand against the interest of the public's need to know on the other.

Nadel Annotation, 26 A.L.R.4th at 670–71. Courts applying a balancing test consider several factors: (1) the public purpose of the party requesting the information; (2) whether the purpose could be accomplished without the disclosure of personal information; (3) the scope of the request; (4) whether alternative sources for obtaining the information exist; and (5) the gravity of the invasion of personal privacy. *E.g., Young v. Rice*, 308 Ark. 593, 826 S.W.2d 252, 255 (1992) (considering the existence of an alternative source for the requested information and the gravity of the invasion); *Bowie v. Evanston Community Consol. Sch. Dist.*, 128 Ill.2d 373, 131 Ill.Dec. 182, 185, 538 N.E.2d 557, 560 (1989) (considering whether purpose could be accomplished without disclosure of personal information); *State ex rel. Jones v. Myers*, 61 Ohio Misc.2d 617, 581 N.E.2d 629, 631 (1991) (considering nature of invasion, value of public interest and existence of alternative sources). A review of these decisions confirms that the balancing inquiry is intensely fact specific.

Iowa's personal records exemption, section 22.7(11), does not list examples of "personal records," nor does it define that term. Consequently, we have followed the federal cases and employed a balancing test in applying this exemption, even though section 22.7(11) does not contain the reference to personal privacy mentioned in the federal exemption and many state exemptions. *See*

*In re Gillespie*, 348 N.W.2d 233, 237 (Iowa 1984) (referring to our analysis in the *City of Dubuque* case as a "public interest—private interest balancing test"); *City of Dubuque*, 297 N.W.2d at 526 (finding the federal cases "helpful").

In the *City of Dubuque* case, a newspaper sought disclosure of information contained in applications for a city manager vacancy. *City of Dubuque*, 297 N.W.2d at 525. The newspaper specifically limited its request to "the name, address, employers, education, training and experience of each of the ... applicants." *Id.* The City argued the applications were exempt from disclosure under section 22.7(11) as "[p]ersonal information in confidential personnel records." *Id.* We concluded the personal records exception was narrowly drawn and did not specifically include employment applications. *Id.* at 527. We also held the requested information, in the absence of evidence to the contrary, did not constitute "personal information that the right of privacy would protect." *Id.* at 526.

In our second case applying section 22.7(11), we considered the confidentiality of documents generated during the investigation of complaints concerning a school administrator. *In re Des Moines Indep. Community Sch. Dist.*, 487 N.W.2d at 667. During the course of the investigation, many documents were prepared that focused on the job performance of district employees. *Id.* at 670. We held section 22.7(11) renders "in-house, job performance documents exempt from disclosure." *Id.* Without explicitly employing a balancing test, we concluded the documents in question "fell within the category of personal information in personnel records," noting the location of the documents in an investigatory file did not affect our decision. *Id.*

These Iowa cases provide limited assistance here where the materials sought are not evaluations of job performance, which are confidential under Iowa law, nor generic information like that requested in the *City of Dubuque* case, which is clearly subject to disclosure. The information DeLaMater seeks falls somewhere in between. Although the fact-specific nature of the applicable anal-

ysis makes other decisions less helpful, a brief discussion of a few factually–similar decisions from other jurisdictions will illustrate the pertinent considerations in applying a privacy exemption.

In the *Young* case, the plaintiff asked to review records from a lieutenant promotion examination. *Young*, 826 S.W.2d at 254. The city offered to release the evaluation forms from the performance test with the names of the candidates redacted. *Id.* Dissatisfied with this response, the plaintiff sought a court order requiring disclosure of the complete documents. *Id.* The trial court refused to order disclosure and the Arkansas Supreme Court affirmed. *Id.* In considering whether the full reports should be disclosed, the court applied a balancing test, weighing the public's right to know against the candidates' right to privacy. *Id.* at 255. The court focused on testimony that the performance test was very stressful for candidates, causing them to exhibit behaviors which, if disclosed, would be embarrassing and humiliating, and would possibly threaten their future employment. *Id.* Due to the sensitive nature of this information, the court held release of the records would "result in a clearly unwarranted invasion of the candidates' privacy," within the meaning of Arkansas' privacy exemption. *Id.* The court reached this conclusion in part, however, because the city was willing to release the redacted forms; the court noted this release would serve the public interest. *Id.*

In contrast, in *Rainey v. Levitt*, 138 Misc.2d 962, 525 N.Y.S.2d 551, 553 (Sup.Ct. 1988), only the scores of persons taking a civil service promotional examination were sought. The court ordered disclosure, relying on the fact the names of unsuccessful candidates had already been made public; the court saw no "meaningful distinction" between releasing the names of these candidates and disclosing their test scores. *Rainey*, 525 N.Y.S.2d at 553. With respect to the successful candidates, the court concluded they had no reasonable expectation of privacy in their examination scores. *Id.*

In the similar area of student test scores, courts have allowed disclosure of test score records, but only when the students' identities remain confidential. For example, in the *Bowie* case, the court held test scores were not exempt from disclosure under the Illinois freedom of information act when all information that would identify the students was deleted and the alphabetical list of scores was scrambled so as to prevent someone from identifying the score of any particular student. *Bowie*, 131 Ill.Dec. at 182, 538 N.E.2d at 560–61; *accord Kryston v. Board of Ed., East Ramapo Cent. Sch. Dist.*, 77 A.D.2d 896, 430 N.Y.S.2d 688, 689 (1980) (requiring disclosure of test scores in a "scrambled" order so as to protect the privacy of the students).

■ Turning to the undisputed facts before us, we think one's score on a promotional examination is akin to students' test scores: privacy interests are implicated. On the other hand, the public has a legitimate interest in the grading accuracy of civil service exams and this interest cannot be protected unless the grading process can be reviewed. We think, however, it is possible to accommodate both interests. The public's interest can be satisfied by revealing the raw scores; the candidates' privacy can be protected by not tying the name of a candidate to a specific score. It should not matter to the public which candidate had a particular score; what matters is that the score was properly calculated. *See Celmins v. United States Dep't of Treasury*, 457 F.Supp. 13, 17 (D.D.C.1977) (requiring disclosure of promotional appraisals and evaluations but without identifying information because identity of candidates was not critical to public's interest in merit promotion procedures).

■ We recognize that disclosure of the raw scores alone may still allow the identification of the individuals who obtained those scores; identification may be possible for those who qualified for promotion because those individuals' names were placed in rank order on the promotional list. In the context of this case, however, we think the public's interest in grading accuracy outweighs the privacy sacrificed by disclosing the scores of the successful candidates. Unlike the students in the *Bowie* case who had no choice but to take the school–administered tests, the

candidates here voluntarily chose to sit for the promotional examination, knowing that the names of successful candidates would be made public *in rank order.* It is a small distinction to also reveal these candidates' specific scores. Consequently, we think the invasion of privacy resulting from disclosure of the scores of successful individuals is tolerable for two reasons: (1) these candidates scored well enough to qualify for promotion which militates against any embarrassment in the score achieved; and (2) the public already knows their rank relative to other successful candidates. *See* Iowa Code § 22.8(3) (stating the policy of chapter 22 is free and open examination of public records even though it may cause embarrassment); *Celmins,* 457 F.Supp. at 16 (requiring disclosure of promotional documents even though identity of the successful candidate's evaluations would result, noting the information was nonstigmatizing); *Rainey,* 525 N.Y.S.2d at 553 (persons successfully completing civil service examination have no reasonable expectation of privacy in their examination scores). Thus, we find no impediment to disclosure by the possibility DeLaMater may be able to identify the individuals who achieved the qualifying scores.

### VI. *Examinations Exemption.*

█ The final exemption upon which defendants rely is contained in Iowa Code section 22.7(19), making confidential

> [e]xaminations, including but not limited to cognitive and psychological examinations for law enforcement officer candidates administered by or on behalf of a governmental body, to the extent that their disclosure could reasonably be believed by the custodian to interfere with the accomplishment of the objectives for which they are administered.

This exemption is intended to protect the integrity of the examination process. *See Roulette v. Department of Cent. Management Serv.,* 141 Ill.App.3d 394, 95 Ill.Dec.

587, 490 N.E.2d 60, 63 (1986) (some exemptions from public records laws "are designed to protect the integrity of certain essential functions of public agencies"). The defendants claim the scores of those taking the examination are exempt from disclosure under this section because disclosure "would interfere with the accomplishment of the objectives for which the tests are administered":

> The success of the civil service promotional exam depends on the existence of unrehearsed responses. Given that the exam is substantially the same each time it is administered, if the scores of the examinees were disclosed, the examinees could compare their scores and figure out where their strengths and weaknesses were.[3]

We find insufficient merit in this argument to satisfy the statutory requirement that the custodian could reasonably believe disclosure would interfere with the test's objectives.

Disclosure of examinees' raw scores on each component of the test would not reveal the *specific content* of the test questions, information which *would* give one with this knowledge an unfair advantage. Rather, disclosure of an applicant's raw scores would at most enable the applicant to focus his future preparation efforts on the *general areas* where his performance was found lacking. Thus, the result of disclosure would be better qualified candidates, not an unfair advantage. Consequently, section 22.7(19) does not apply.

### VII. *Summary.*

We conclude DeLaMater is entitled to learn the raw scores of each person taking the civil service promotional examinations for lieutenant in 1991 and 1993, and the grading scale for each component of the examination.[4] The exemptions for trade secrets, personal records and examinations are inapplicable with one exception. Because privacy interests are implicated and because the public

---

3. The defendants advance no reason why disclosure of the grading scale, i.e., the theoretical maximum score, would compromise the promotional examination.

4. To ensure there is no further confusion about the information which must be disclosed, we adopt DeLaMater's definition of the grading scale: the total possible points a candidate could score on each component of the promotional examination.

purpose can be satisfied without linking the scores to a particular candidate, the defendants may redact the names of the individuals achieving the disclosed raw scores. Therefore, we affirm the district court's order of summary judgment for DeLaMater, as modified.

**AFFIRMED AS MODIFIED.**