CADY, Chief Justice
(dissenting).
I respectfully dissent. The majority opinion takes a step backward from the new age of open government in this state. It is a step in the wrong direction.
This case goes to the heart of why we have an open records act in this state: the expectation that government will be better suited to deal honestly and fairly with its citizens when its citizens have the ability to examine the records of government business. While our legislature understands that confidentiality is needed in some aspects of government work, the facts of this case reveal a substantial public justification for disclosure of the requested information. The exemptions enacted by our legislature were not designed to capture such circumstances. The public nature , of the requested information in this case is supported by the facts. To defuse public criticism over an incident in a public school of public concern, the school district announced that two public employees would be disciplined for their conduct in connection with the incident. This public declaration, in the face of public concern and criticism over an initial response by the school superintendent, made it reasonable for the school district to also let the public *237 know what discipline was imposed. The public did not just have an interest in knowing that discipline would be imposed, but also in knowing whether the discipline was appropriate and meaningful. In this context, the discipline was “public” from the moment it was announced and should have been disclosed pursuant to the Open Records Act. In this dissent, I will first explain why I believe the majority opinion is inconsistent with decades of caselaw. I will then discuss how the Open Records Act should have been applied to mandate disclosure in this case.
Over the last thirty-two years, we have developed a solid body of interpretive law to guide us in applying the “[pjersonal information in confidential personnel records” exemption to the public’s right to examine public records. See Iowa Code § 22.7(11) (2009). This law has allowed our state to sort through the thicket of difficult and sensitive clashes between the individual privacy interests of personnel files on government employees and the competing right of the public to know. The majority now inexplicably dumps this law and unravels a long chain of past cases of this court in favor of an amorphous interpretive approach built on the premise that the operative statutory phrase we have been interpreting as a court over the last thirty-two years is now unambiguous, except when particular circumstances might render it ambiguous. This confusing approach is not only a dramatic shift that is inconsistent with the basic way courts develop and apply law, it is inconsistent with the way we define privacy in the law and the way our legal tests seek to draw principled lines. Additionally, it is an approach we specifically rejected long ago.
Within Iowa’s declared policy of open government records, our legislature carved out numerous exemptions. One exemption is “[pjersonal information in confidential personnel records.” Id.
The phrase used by our legislature to articulate this exception is not without ambiguity. For example, “personal” can mean several different things. It can mean “of, relating to, or affecting a particular person.” Merriam-Webster’s Collegiate Dictionary 924 (11th ed.2005). Or it can mean “relating to ... an individual’s ... private affairs.” Id. Under the first definition, anything in a confidential personnel record relating to a particular person would be covered by the exemption; under the latter, only private matters relating to that individual would be covered. Until today, we have never adopted the first of these two definitions of “personal” in interpreting section 22.7(11). Otherwise, we would never have decided, as we did in past cases, that an employee severance agreement was subject to disclosure or that information about individual employees’ sick leave and vacation was subject to disclosure. A review of these past cases clearly reveals the approach we have taken to best serve the purpose and intent of the statute.
Our first opportunity to interpret this exemption was in 1980, not long after the passage of the Iowa Open Records Act. In City of Dubuque v. Telegraph Herald, Inc., we were called upon to decide if applications for an appointive city office were exempt from disclosure as “personal information in confidential personnel records.” 297 N.W.2d 523, 526 (Iowa 1980) (internal quotation marks omitted), superseded by statute on other grounds, Iowa Code § 22.8, as recognized in City of Sioux City v. Greater Sioux City Press Club, 421 N.W.2d 895, 897 (Iowa 1988). We first turned to the language of the statute and observed our legislature wrote the exemptions to be narrowly construed. Id..at 527. We also observed that our legislature did not exempt all personnel records, but only *238 “confidential personnel records.” Id. at 526. Moreover, we observed our legislature did not just exempt “confidential personnel records,” but only “personal information” in confidential personnel records. Id. We indicated the “personal information” requirement revealed our legislature intended to exempt information “that the right of privacy would protect.” Id. We then concluded that Iowa’s “personal information” exemption is properly applied and interpreted by balancing the public interests served by disclosure against the private interests in protecting privacy, a test used by federal courts in “applying and interpreting” a similar exemption in the Federal Freedom of Information Act, 5 U.S.C. § 552(b)(6) (2006), that protects information in personnel files from an unwarranted invasion of personal privacy. Telegraph Herald, 297 N.W.2d at 526-27. In adopting this test, we rejected the argument made by the city in the case that the “personal information” component of the exemption was our “legislature’s effort” to apply “the private business practice of keeping' employment applications confidential” to “public bodies.” Id. at 527 (emphasis added). In other words, we rejected a categorical interpretation that “personal information” meant matters customarily kept confidential in private business. Thus, the approach adopted by the majority today of interpreting “personal information” only as it relates to a person was specifically rejected by our court in 1980.
Since Telegraph Herald, we have had several other opportunities to interpret this exemption and consider its application to the real-world environment. In 1992, we held that job performance evaluations of school employees contained in an investigation file were exempt from disclosure as “[pjersonal information in confidential personnel records,” but a settlement agreement was not similarly exempt as “personal information.” Des Moines Indep. Cmty. Sch. Dist. Pub. Records v. Des Moines Register & Tribune Co., 487 N.W.2d 666, 669-70 (Iowa 1992). In this case, a school district instituted an investigation into parent-teacher complaints against a school principal and accusations of racism and sexism by the principal. Id. at 667. The investigation was conducted by two separate investigative committees. Id. During the course of the investigation, the committees collected documents relating to the past performance of school employees. Id. at 670. The investigation was halted after a settlement was reached, but the Des Moines Register then sought disclosure of “all documents related to the administrative investigation,” including job performance evaluations. Id. at 668. It also sought disclosure of the settlement agreement. Id. at 669.
The majority reads Des Moines Independent Community School District to hold that job performance evaluations were categorically exempt as “personal information” and uses this conclusion to undermine the need for a balancing test. Yet, we were never asked to decide in the case if performance evaluations were personal information. Instead, the relevant dispute in the case over the performance evaluations, and the one we addressed and resolved, was whether the section 22.7(11) exemption was lost because the performance evaluations were located in an investigation file instead of the actual confidential personnel files. Id. at 670. It is important to recall in the case that the Des Moines Register sought documents relating to the “administrative investigation.” Id. at 668. Contrary to the conclusion of the majority, we only held “[t]he nature of the record is not controlled by its place in a filing system.” Id. at 670. Thus, we said records that fall “within the category of personal information in personnel records” do not lose their protection when “deposited in investigation files.” Id. We did not engage in a balancing test because *239 the issue of whether performance evaluations fell within the exemption was not raised on appeal. The majority has misread our prior case, and it is unfair to use the case as authority for its position that the balancing test is not used to determine if the section 22.7(11) exemption applies. In fact, we specifically applied the balancing test in the case to decide if the settlement agreement was “personal information in a confidential personnel record.” Id. at 669. We noted the competing public and private characteristics of the settlement agreement, but found the balance weighed in favor of disclosure. Id. Without question, the balancing test continued as our law following our decision in Des Moines Independent Community School District.
We next considered the section 22.7(11) exemption four years later in DeLaMater v. Marion Civil Service Commission, 554 N.W.2d 875 (Iowa 1996). In that case, we were called upon to decide if civil service examination results were exempt as “ ‘personal information in confidential personnel records.’ ” DeLaMater, 554 N.W.2d at 878 (quoting Iowa Code § 22.7). We found the subject of test scores implicated both privacy and public interests, but that public interests supported disclosure when the scores would be disclosed without identifying the name of the test taker. Id. at 880. Importantly, we not only applied the balancing test to reach the result, we reviewed the background and importance of the balancing test in construing the exemption. Id. at 879. We observed that, when the legislature does not precisely delineate the types of information considered private and thus exempt from disclosure, Id. (quoting Andrea G. Nadel, Annotation, What Constitutes Personal Matters Exempt from Disclosure by Invasion of Privacy Exemption Under Freedom of Information Act, 26 A.L.R.4th 666, 670-71 (1983)). We also specifically observed that our legislature did not list examples of “personal records” or define the term, which rendered the balancing test necessary to interpret the legislature’s meaning of “personal information.” Id. at 879.
“the courts most often will apply general privacy principles, which examination involves a balancing of conflicting interests — the interest of the individual in privacy on the one hand against the interest of the public’s need to know on the other.”
Finally, we had an opportunity three years later to consider if a city worker’s sick leave compensation and usage fell within the section 22.7(11) exemption in Clymer v. City of Cedar Rapids, 601 N.W.2d 42 (Iowa 1999). We again observed that section 22.7(11) does not precisely articulate what information the legislature considers private. Clymer, 601 N.W.2d at 45. We also cautioned that precedent is of little assistance and further recognized that the role of the court was to decide if information personal to the employee and placed in a confidential personnel file was intended by the legislature to remain confidential. Id. As a result, we found the balancing test was required given the “ambiguity” of the statute. Id. at 47. In applying those tests, we held the compensation allocated to named employees was not exempt as long as medical conditions or professional evaluations were not disclosed. Id. at 47-48. Otherwise, we held the address, gender, and birthdate information was exempt. Id. at 48.
In short, we have consistently applied a balancing test to determine whether a record qualifies as “[pjersonal information in confidential personnel records” under section 22.7(11). The majority “question[s] whether Iowa even has a balancing test,” but elects to “leave that question for another day.” Yet, there is no real question that the majority has overruled Clymer, DeLaMater, Des Moines Independent *240 Community School District, and Telegraph Herald.
The majority wants the court to follow Gabrilson v. Flynn, 554 N.W.2d 267 (Iowa 1996), claiming it supports the notion that the balancing test is not used when the information at issue is the type commonly viewed in the world outside of government as confidential. Yet, not only did we specifically reject such an approach in Telegraph Herald, the majority’s characterization of the Gabrilson holding is misplaced. In Gabrilson, we only held the balancing test is not used to interpret those exemptions that identify the information with precision. 554 N.W.2d at 273. The rationale for this holding is that the legislature has already engaged in a balancing test when it specifically identifies the information sought to be exempt, making it inappropriate for courts to further apply the balancing test. Id. Importantly, Gabrilson dealt with the examination exemption under section 22.7(19), which we found was a precise delineation that needed no balancing test to determine its meaning. Id. at 272; see also Iowa Code § 22.7(19) (“Examinations ... to the extent that their disclosure could reasonably be believed by the custodian to interfere with the accomplishment of the objectives for which they are administered.”). The approach we took in Gabrilson was the same we recognized in broadly discussing the balancing test in DeLaMater. The balancing test is necessary when the legislature has not specifically listed the information sought to be exempted under a personal privacy exemption. DeLaMater, 554 N.W.2d at 879. Thus, it is inappropriate to read Gabrilson to reject the necessity of a balancing test under our exemption for “[pjersonal information in confidential personnel records.” See Iowa Code § 22.7(11). Moreover, we made it clear in both DeLaMater and Clymer that our legislature did not define personal information or list any specific examples that would allow the exemption to be applied without balancing the competing interests. If our prior cases have any meaning, it is that the balancing test is necessary to interpret the phrase “personal information.” Gabrilson clearly does not support the position of the majority, but is consistent with our line of past cases.
As a result, we have built thirty-two years of jurisprudence concerning section 22.7(11) with the aid of a balancing test. During these three decades, our legislature never disagreed with our interpretive approach by amending the statute to abandon the balancing test. Recently, the legislature did amend section 22.7(11) to limit the exemption to records of “identified or identifiable individuals” and to specifically except certain types of records from the exemption, including the records concerning the discharge of an individual as a result of the final disciplinary action.[4] See *241 2011 Iowa Acts ch. 106, § 10 (codified at Iowa Code § 22.7(11) (Supp.2011)). Yet, the amendment limiting the personnel file exemption to records of identified or identifiable individuals does not change the need for the balancing test to resolve the continuing ambiguity in the phrase “personal information.” Obviously, if an individual cannot be identified by a document in a confidential personnel file, there is no individual privacy concern in the document. Thus, the amendment to limit the exemption to identified or identifiable individuals merely reveals a privacy interest is implicated only when an identified or identifiable individual is involved. When an individual is identified, the exemption applies and a balancing test will be needed to weigh the individual interest with the public interest, just as before. Furthermore, the addition of exceptions to the exemption merely eliminates the balancing test for certain types of records delineated by the legislature as specifically excluded from the exemption. The amendment reveals our legislature did precisely what our cases have been saying — exemptions that are specific and clearly discernible are applied without a balancing test. See DeLaMater, 554 N.W.2d at 879 (noting the balancing test is not used when an exemption is described in the statute with precision). Yet, for those records not excluded, the balancing test is still needed to resolve the ambiguity of what constitutes “personal information.” Id.
After thirty-two years of consistent law to the contrary, the majority concludes the term “personal information” is actually clear, precise, and specific, which enables courts to decide what information in a confidential personnel file is exempt as “personal information” by doing nothing more than looking at the information and deciding it is “personal.” Notwithstanding, it apparently attempts to keep the balancing test in reserve to use in the more difficult cases when the result might not be so readily apparent. While the majority attempts to eliminate the need for any standard in normally applying the “[pjersonal information in confidential personnel records” exemption, in truth, any application of the phrase “personal information” to particular facts necessarily balances personal interests against public interests. While some conclusions may be easier to reach than others, the balancing test is still applied to the thought process, even if subtly, because the balancing test is the only principled way to distinguish between personal information and public information.
The majority also seeks to support its conclusion that disciplinary records in a person’s confidential personnel file are “personal information” on their face because such records are nothing more than personal job evaluations that were conceded by the parties to be “personal information” in Des Moines Independent Community School District. Yet, the majority makes this declaration without any expla *242 nation. Even conceding that job performance evaluations would normally be “personal information” under a balancing test, a vast difference exists between past job performance evaluations and the publicly announced job discipline in this case. Job performance evaluations normally address very personal and intimate information relating to an array of strengths and weaknesses found at the core of a person’s character and personality. Discipline imposed by a supervisor, on the other hand, reflects a judgment by the supervisor about an incident of wrongdoing by the person. While both types of information have some privacy interests, performance evaluations of government employees are much more personal, while discipline of government employees implicates more public interest. Moreover, the discipline in this case was imposed only after an incident of wrongdoing was made public, and it followed a public clamor for disciplinary action. The school superintendent publicly announced that discipline would be imposed so that the public would be protected, but expected the public to trust him that the discipline imposed was sufficient and appropriate instead of describing the nature of the discipline. These facts made the discipline a public matter.[5] The two situations found by the majority to be the same could not be more different. As the balancing test clearly demonstrates, the discipline imposed by the school superintendent in this case was not exempt under section 22.7(11). The factors considered under the balancing test support this conclusion. See Clymer, 601 N.W.2d at 45 (identifying five factors to weigh the individual privacy interests against the public’s need to know in deciding what information falls within the “personal information” exemption).
The first factor used in the balancing test considers the public purpose of the party requesting the information. A substantial purpose for the information weighs in favor of the public’s need to know.
The arguments of the parties teed up this factor. The ACLU Foundation of Iowa believed the public needs information about the discipline imposed in this case to be better prepared to scrutinize the adequacy of the school’s response to the misconduct and better assure accountability for wrongdoing directed toward students by school staff. The ACLU Foundation of Iowa also asserted the discipline involved a subject — school strip searches — in which the public maintains a strong interest. The school district responded that the public purpose in knowing the discipline is diminished because the adequacy of the discipline imposed cannot be properly assessed by the public without further disclosure of the specific underlying facts of the incident.
In general, our law recognizes a legitimate public concern over the discipline imposed for wrongdoing by a public employee. See The Hawk Eye v. Jackson, 521 N.W.2d 750, 754 (Iowa 1994) (recognizing a substantial public concern in the discipline of police officers). This concern is tied in with the needed public trust in all aspects of government, including public schools. In particular, it includes the extent and manner that students are searched by school officials. See Iowa Code § 808A.2(4)(a) (prohibiting strip searches of students by school officials). If adults fail to protect children, children will not be protected. Moreover, without adequate discipline for wrongs perpetrated by adults against children, the wrongdoing *243 continues. Clearly, the public concern in this case is legitimate. While a complete understanding of discipline needs context, the imposition of discipline normally implies wrongdoing, and knowledge of the discipline can give understanding to the predicate wrongdoing. Consequently, I would conclude the subject of this case is a matter of legitimate public concern and the information sought by the ACLU Foundation of Iowa is proper.
The second factor is whether the public purpose can be accomplished without disclosure of the information. Individual privacy interests weigh against disclosure when the public purpose can be met without disclosure.
In this case, the public cannot assess the seriousness in which the school district treated the search of the students without knowledge of the discipline. The public has been given knowledge of a disconcerting incident, but has no ability to resolve its concern without knowledge of the discipline. Consequently, this factor weighs in favor of disclosing the information.
The third factor is the scope of the request. Generally, a narrow or limited request would weigh in favor of disclosure because the intrusion into the individual privacy interests would be minimized. See DeLaMater, 554 N.W.2d at 880 (disclosing test scores without disclosing individual names of test takers). In this case, the ACLU Foundation of Iowa only sought disclosure of the nature and scope of the discipline, not the underlying personal information. Thus, the scope of the request weighs in favor of disclosure.
The fourth factor is whether alternative sources for obtaining the information exist. If multiple sources of the requested information are available, individual privacy interests would be minimized. Consequently, the existence of multiple sources of information supports disclosure.
Like all the factors, the availability of alternative sources for obtaining the information is considered to balance the interests between individual privacy rights and the public’s need to know. Clymer, 601 N.W.2d at 45. The sources of disclosure in this case appear to be very limited. The school district only argued the individual employees would be the alternative source.[6] Thus, the factor would weigh in favor of protecting the individual privacy right.
The final factor is the gravity of the invasion of personal privacy. A substantial invasion of personal privacy would weigh against disclosure.
In this case, the seriousness of the invasion is minimized by the limited request for information. Additionally, the public has been informed of the incident through news reporting sources, and the school district released the names of the two staff members who were subjected to discipline. Thus, the disclosure of the discipline at this point would not invade the personal privacy of the individual staff in the same manner as it would if his or her name had not already been disclosed. The names of the individuals involved in the discipline have already been associated with the event, and the ACLU Foundation of Iowa only requested that the discipline imposed be disclosed. Our legislature has specifically instructed that “free and open examination of public records is generally in the public interest” even if it results in “embarrassment” to others. Iowa Code § 22.8(3). This admonition applies not only to the individual privacy interest, but also to the school district. Any embar *244 rassment or other negative response visited on the school district as a result of the disclosure of its discipline is not a factor to consider.
Applying the five factors, I would conclude the district court erred in granting summary judgment for the school district and failing to grant summary judgment for the ACLU Foundation of Iowa. The factors weigh in favor of disclosing the discipline imposed by the superintendent of the school district. The factors reveal our legislature did not intend the discipline imposed on school employees for conducting a strip search of female students in a gym locker room to be exempt from disclosure under section 22.7(11).
Without the balancing test, courts will only be able to apply the section 22.7(11) exemption through their own personal assessment of the personal nature of the information at issue, divorced from any legitimate public need for the information. The goal of transparency in government will surely be thwarted by those in government who, in the face of public criticism over the handling of employee misconduct concerning matters of legitimate public interest, will be able to quell public discourse and end controversies over employee misconduct of public concern with no public scrutiny by simply announcing that discipline has been imposed. Thus, the public will have no means to measure the appropriateness of the government’s response to misconduct in matters of legitimate public interest. This approach is a return to the government of the past and a danger to our future.
WATERMAN and MANSFIELD, JJ„ join this dissent.

. Section 22.7(11) now reads:
11. a. Personal information in confidential personnel records of government bodies relating to identified or identifiable individuals who are officials, officers, or employees of the government bodies. However, the following information relating to such .individuals contained in personnel records shall be public records:
(1) The name and compensation of the individual including any written agreement establishing compensation or any other terms of employment excluding any information otherwise excludable from public information pursuant to this section or any other inapplicable provision of law. For purposes of this paragraph, "compensation " means payment of, or agreement to pay, any money, thing of value, or financial benefit conferred in return for labor or services rendered by an official, officer, or employee plus the value of benefits conferred or services rendered by an official, officer, or employee plus the value of benefits conferred including but not limited to casualty, disability, life, or health insurance, other health or wellness benefits, vacation, *241 holiday, and sick leave, severance payments, retirement benefits, and deferred compensation.
(2) The dates the individual was employed by the government body.
(3) The positions the individual holds or has held with the government body.
(4) The educational institutions attended by the individual, including any diplomas and degrees earned, and the names of the individual’s previous employers, positions previously held, and dates of previous employment.
(5)The fact that the individual was discharged as the result of a final disciplinary action upon the exhaustion of all applicable contractual, legal, and statutory remedies.
b. Personal information in confidential personnel records of government bodies relating to student employees shall only be released pursuant to 20 U.S.C. § 1232g.

. There is nothing inherently private about discipline. It can be public. For example, in our attorney disciplinary system, we impose a "public reprimand" as the sanction for certain ethical infractions. See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Denton, 814 N.W.2d 548, 549 (Iowa 2012).

. Although the individual employees are the only alternative source of the information, it is interesting to note that they never intervened in this action nor otherwise asserted an objection to the disclosure of their discipline.