# IN THE COURT OF APPEALS OF IOWA

No. 21-1176
Filed September 21, 2022

**STEPHEN J. SWANSON,**
    Plaintiff-Appellant,

**vs.**

**GARY OLDENBURGER, WAPELLO COUNTY ATTORNEY, and WAPELLO COUNTY,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Des Moines County, John G. Linn, Judge.

Stephen Swanson appeals the grant of summary judgment for the defendants on claims related to disclosing information in his personnel record. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Matthew B. Moore of The Law Offices of Matthew B. Moore, PLLC, Oskaloosa, for appellant.

David E. Schrock and Rachael D. Neff of Smith Mills Schrock Blades P.C., Cedar Rapids, for appellees.

Heard by Tabor, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Stephen Swanson sued Wapello County Attorney Gary Oldenburger and Wapello County following the disclosure of information about his employment, alleging the disclosure violated Iowa's open record laws, prevented him from obtaining other employment, and defamed him. He appeals the order granting summary judgment for the defendants on each claim. Swanson contends the district court erred in applying Iowa Code section 22.7(11)(a)(5) (2016)[1] to his open-records claims. As for his blacklisting claims, Swanson contends the court erred by determining that section 730.1 cannot be the basis for a civil lawsuit against Oldenburger as an individual and that Oldenburger's acts did not create liability for the county. Finally, Swanson contends the court erred by finding he failed to raise a question of fact on whether any of Oldenburger's statements were false and made with actual malice to support his defamation claims.

We affirm the district court on the grant of summary judgment on Swanson's blacklisting and defamation claims. But because the disclosure of Swanson's personnel records was impermissible under Iowa Code chapter 22, we reverse the grant of summary judgment on Swanson's open-records claim and remand for further proceedings.

### I. Background Facts and Proceedings.

Swanson was employed by Wapello County as an assistant county attorney for about six years. During that time, he received several warnings for failure to satisfactorily resolve cases. Lisa Holl, Oldenburger's predecessor, gave Swanson

---

[1] Unless stated otherwise, all citations are to the 2016 version of the Iowa Code.

a written reprimand in 2012 and suspended him for one week without pay in 2014. In 2015, Oldenburger emailed Swanson about his failure to resolve cases within one year before issuing a four-page letter of reprimand. A second email followed the reprimand.

When Swanson continued to have problems with case resolution one year later, Oldenburger gave Swanson a choice: resign from employment or be terminated. Oldenburger drafted a notice of termination that summarized the past disciplinary actions and Swanson's continued difficulties with case resolution that led to dismissals for failure to prosecute. Oldenburger signed and dated the notice on November 28, 2016. Swanson's signature of acknowledgment is absent from the document as Swanson opted to resign instead. His effective date of resignation was December 23, 2016.

In 2018, Swanson ran for Boone County Attorney against the incumbent, Dan Kolacia. Believing that Swanson was unfairly campaigning against him, Kolacia asked Oldenburger if he had any documents to help in his bid for reelection. Oldenburger told Kolacia "there may be stuff," but he would only give Kolacia "what was allowed under chapter 22." Oldenburger said, "So if you made the request under chapter 22, I would have to comply, but that's all I can do for you." Shortly after their conversation, Kolacia submitted to Oldenburger a request for information under Iowa Code chapter 22. He asked for "the opportunity to inspect or obtain copies of public records that pertain to all reprimands, reprisals, performance reviews, and letters concerning Stephen Swanson's employment." In response, Oldenburger emailed Kolacia the termination notice he had prepared, noting that Swanson "resigned in lieu of termination." Oldenburger's email states,

"I believe this is the only document I can release pursuant to Chapter 22, as this is the only document which shows the reasons and rationale for his resignation."

In August 2018, a reporter for the Des Moines Register contacted Oldenburger for information about Swanson's employment with the county attorney's office. The reporter asked Oldenburger if he could "confirm whether this Nov. 28, 2016 letter that you signed did in fact result in the termination of Mr. Stephen Swanson." He also asked for a list of cases dismissed because of Swanson's failure to meet deadlines. Oldenburger replied, "I can confirm that this letter was provided to Mr. Swanson, along with a resignation letter. Mr. Swanson as a result did resign in lieu of termination . . . ." But he explained that listing the dismissed cases would be "pretty challenging" because of the time and cost it would entail. The reporter followed up by asking about the discrepancy in date of termination listed in the termination notice (December 1) and the date on which Swanson's resignation became effective (December 23). Oldenburger answered, "I offered Mr. Swanson the opportunity to resign in lieu of being terminated, and he asked for more time and chose a date just before Christmas, which I agreed to."

On August 13, the Des Moines Register published the reporter's article about Swanson under the headline, "Tardy Lawyer Runs for Office."[2]

Nine days after Register published the article, Swanson sued, alleging that Oldenburger and Wapello County[3] violated Iowa Code chapter 22 by releasing

---

[2] Swanson lost the election for Boone County Attorney that November.

[3] Swanson also filed claims against Kolacia and the Boone County Democratic Party (BCDP). At the time of the district court's ruling, Swanson had voluntarily dismissed with prejudice his claims against the BCDP and planned to dismiss his claims against Kolacia.

confidential personnel records. He claimed they also prevented him from obtaining other employment, in violation of Iowa Code sections 730.1 and 730.2, and illegally provided confidential personnel records to another, in violation of Iowa Code section 91B.2. Finally, Swanson claimed Oldenburger and Wapello County libeled and slandered him. Oldenburger and Wapello County moved for summary judgment on all counts, which the district court granted. Swanson appeals.

## II. Scope and Standard of Review.

We review the grant of summary judgment for correction of errors at law. *See Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019). Summary judgment is appropriate when the material facts are undisputed and the moving party is entitled to judgment as a matter of law. *See id.* We view the record in the light most favorable to the nonmoving party, indulging every legitimate inference within reason. *See id.* If reasonable minds could draw different inferences from the record and reach different conclusions, summary judgment is not proper. *See id.*

## III. Disclosure of Confidential Records.

We begin by addressing Swanson's claims related to the alleged open-records violation. The Iowa Open Records Act provides "the right to examine and copy a public record and to publish or otherwise disseminate a public record or the information contained in a public record." Iowa Code § 22.2(1). Although the act exempts certain public records from disclosure, there is, generally, "a liberal policy in favor of access to public records." *Mitchell v. City of Cedar Rapids*, 926 N.W.2d 222, 229 (Iowa 2019) (citation omitted). The burden, therefore, falls on the party claiming a record is exempt to show that an exemption applies. *See id.* We narrowly construe an exemption unless it uses "broadly inclusive" language, in

which case we give effect to the legislative purpose underlying the exemption rather than "mechanically apply[ing] the narrow-construction rule." *DeLaMater v. Marion Civ. Serv. Comm'n*, 554 N.W.2d 875, 878 (Iowa 1996).

Section 22.7 lists the types of information exempt from the disclosure. At issue is an exemption for "[p]ersonal information in confidential personnel records" of identifiable individuals employed by government bodies. *See generally* Iowa Code § 22.7(11)(a). But the legislature excluded some information that would otherwise fall under that exemption. *See id.* § 22.7(11)(a)(1)–(5). One of those exclusions involves information in personnel records relating to "[t]he fact that the individual was discharged as the result of a final disciplinary action upon the exhaustion of all applicable contractual, legal, and statutory remedies." *Id.* § 22.7(11)(a)(5). The question before us is whether the termination notice Oldenburger disclosed falls under this exclusion or is exempt from the disclosure requirements of chapter 22.

The district court determined that Swanson's resignation meets the criteria for disclosure under section 22.7(11)(a)(5). In reaching its conclusion, the court noted that section 22.7(11)(a)(5) is a disclosure provision, and therefore, the term "discharge" should be interpreted broadly. Although Black's Law Dictionary defines "discharge" as "the firing of an employee," Merriam Webster defines it more broadly as "to dismiss from employment" or "to release from service or duty." The district court used the latter definition in reaching its conclusion that the term "discharge" encompasses resignation in lieu of termination. Because Swanson concedes that he would have been fired if he had not resigned, the court found the termination notice released him from his employment. The court held that, as

such, the termination notice qualifies as information relating to a discharge under section 22.7(11)(a)(5) and disclosure was therefore permitted.

Swanson contends the district court erred in its interpretation of section 22.7(11)(a)(5). He points to a 2017 legislative amendment that added "[t]he fact that the individual resigned in lieu of termination" and "the documented reasons and rationale for the resignation in lieu of termination" as information in personnel records that can be disclosed under section 22.7(11)(a)(5).[4] *See* 2017 Iowa Acts ch. 10, § 50. In Swanson's view, this change in the statutory language shows the legislature did not consider "resignation in lieu of termination" as discharge in its prior version of the law. The defendants counter that the amendment only "clarif[ied] and expound[ed] on" what types of information are subject to disclosure.

We need not reach the question of whether the 2017 legislative amendment clarified or altered the open records statute because the statute in effect at the time of Swanson's discharge was unambiguous. *See State v. Guzman-Juarez*, 591 N.W.2d 1, 3 (Iowa 1999) (noting that a statutory amendment can either alter an existing law or clarify it but "question[ing] the propriety of even considering the subsequent history of this law when the statute as originally enacted is not

---

[4] The amendment also requires a government body taking disciplinary action against an employee that may result in information described in section 22.7(11)(a)(5) being placed in the employee's personnel record to "notify the employee in writing that the information placed in the employee's personnel file as a result of the disciplinary action may become a public record." 2017 Iowa Acts ch. 10, § 54. Although the amendment occurred before Oldenburger's disclosures, it applies only to information placed in personnel files after the effective date of the statute, February 17, 2017. *See* 2017 Iowa Acts ch. 10, § 53. The termination letter was placed in Swanson's personnel file before this date.

ambiguous"). That statute does not allow disclosure in all instances in which an employee is discharged; rather, it limits the disclosure to situations in which a government employee is "discharged as the result of a final disciplinary action upon the exhaustion of all applicable contractual, legal, and statutory remedies." Iowa Code § 22.7(11)(a)(5) (2016). In other words, there must be a final disciplinary action *and* the employee must exhaust all applicable remedies before the information is disclosed. Assuming that the termination notice qualifies as final disciplinary action, there is nothing in the record to support a finding that Swanson exhausted all contractual, legal, and statutory remedies. *See* Susan P. Elgin, *What Happens in Iowa Stays in Iowa: A Framework for Implementing Changes to State Open Records Laws*, 98 Iowa L. Rev. 1677, 1703 (2013) (noting "it is possible that the government employer was able to promise confidentiality, given the state of the law at the time, . . . in exchange for either the employee's resignation or a forgoing of his or her right to a hearing"). Without a showing that Swanson exhausted all available remedies, the termination notice and information about his resignation was exempt from disclosure under Iowa's open records statute. Because the district court erred in determining the disclosures were permitted under section 22.7(11)(a)(5), we reverse the grant of summary judgment on Swanson's claim regarding the disclosure of confidential information and remand for further proceedings.

**IV. Blacklisting.**

We turn to Swanson's blacklisting claims against Oldenburger and Wapello County. Blacklisting claims stem from the provisions of Iowa Code section 730.1 and 730.2. Section 730.1 states:

If any person, agent, company, or corporation, after having discharged any employee from service, shall prevent or attempt to prevent, by word or writing of any kind, such discharged employee from obtaining employment with any other person, company, or corporation, except by furnishing in writing on request a truthful statement as to the cause of the person's discharge, such person, agent, company, or corporation shall be guilty of a serious misdemeanor and shall be liable for all damages sustained by any such person.

Section 730.2 states:

If any railway company or other company, partnership, or corporation shall authorize or allow any of its or their agents to blacklist any discharged employee, or attempt by word or writing or any other means whatever to prevent such discharged employee, or any employee who may have voluntarily left said company's service, from obtaining employment with any other person or company, except as provided for in section 730.1, such company or partnership shall be liable in treble damages to such employee so prevented from obtaining employment.

Reading the provisions together, the court *in Glenn v. Diabetes Treatment Centers of America, Inc.*, 116 F. Supp. 2d 1098, 1103–04 (S.D. Iowa 2000), set forth these elements of a claim of action:

(1) the defendant discharged plaintiff; (2) thereafter, by word, writing or other means the defendant prevented or attempted to prevent the plaintiff from obtaining other employment; (3) defendant acted with the predominant purpose of preventing plaintiff from obtaining future employment; and (4) defendant's conduct was a proximate cause of damage to plaintiff.

Swanson alleges that Oldenburger violated section 730.1 by trying to prevent him from obtaining other employment and providing a false statement about his discharge. He claims Wapello County violated section 730.2 by allowing Oldenburger to blacklist him. Following an unpublished decision of this court, the district court determined that a civil cause of action could not be brought against Oldenburger under section 730.1 because it is a criminal statute. *See Conrad v.*

*Iowa Cent. Cmty. Coll.*, No. 07-0818, 2008 WL 2746324, at *4 (Iowa Ct. App. July 16, 2008) ("Conrad concedes that section 730.1 does not apply because it is a criminal statute . . . ."). And as for the county, the court found Oldenburger was not granted the authority to render it liable for his actions:

> Assuming that Wapello County is a "corporation" within the meaning of section 730.2, the statute only applies if the corporation "authorize[d] or allow[ed] any of its agents to blacklist" the employee. The Court finds that Wapello County cannot be held liable under section 730.2 for the actions of Oldenburger in disclosing the termination notice. The power of a county is vested in the board. Iowa Code § 333.301(2). Oldenburger, as county attorney, did not have the authority to trigger liability for the County under the blacklisting statute.

The district court also found that Swanson failed to show evidence that the defendants prevented or attempted to prevent him from obtaining other employment or acted with a purpose to do so.

Even if the district court erred by finding the county could not be held liable for Oldenburger's actions, Swanson's blacklisting claim fails as a matter of law because he must show the defendants intended to injure him by preventing future employment. Swanson claims that "Oldenburger knew his illegal disclosure would essentially go viral and, arguably, reach not only the Boone County voters electing the Boone County Attorney, but would also be a permanent, internet, 'Scarlett's Letter' haunting [him] as to all future potential employers in perpetuity." We disagree. The record shows Oldenburger gave the information to Kolacia and a reporter in response to open records requests. Although Oldenburger may have erred in his belief that the information was not confidential, there is no evidence on which to base a finding that Oldenburger or Wapello County intended to injure Swanson in order to deny him future employment—only speculation and

conjecture. *See Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 545 (Iowa 2018) ("[S]peculation is not sufficient to generate a genuine issue of fact." (citation omitted)). Because Swanson failed his burden, we affirm the grant of summary judgment for the defendants.

**V. Defamation.**

Finally, we address Swanson's defamation claims. Swanson alleges that the termination notice contained false statements and that Oldenburger defamed him by releasing it. He also alleges the county is liable for Oldenburger's acts under the doctrine of respondeat superior.

"The prima facie elements a plaintiff must prove in a defamation action are that 'the defendant (1) published a statement that was (2) defamatory (3) of and concerning the plaintiff.'" *Bauer v. Brinkman*, 958 N.W.2d 194, 198 (Iowa 2021), *as amended* (Apr. 21, 2021). But as our supreme explained in *Bertrand v. Mullin*, 846 N.W.2d 884, 892 (Iowa 2014), "a plaintiff who is a candidate for public office becomes a public official." Claims of defamation against a public official, as here, have two added elements that require proof by clear and convincing evidence: "the statement must be false and it must be made with actual malice." *Bertrand*, 846 N.W.2d at 892. "A statement is made with actual malice when accompanied by "knowledge that it was false or with reckless disregard for its truth or falsity." *Id.* at 894 (citation omitted).

The district court found Swanson failed to show sufficient evidence for a factual dispute on whether the statements Oldenburger made in disclosing the termination notice were false or made with actual malice:

> [Swanson] admits that he was given the option to resign in lieu of termination. In Oldenburger's email to Kolacia, Oldenburger explained that [Swanson] resigned in lieu of termination, and that the termination letter was prepared for [Swanson] to sign but was not used. These were truthful statements. Furthermore, the statements made by Oldenburger to [the reporter] were also truthful. Oldenburger confirmed that [Swanson] resigned in lieu of termination. His other statements to [the reporter] about the resignation date, and the dates that [Swanson] was employed with Wapello County, were also truthful statements. [Swanson] admits that these are true statements.
>
> The statements within the termination notice regarding the case management issues and prior reprimands are also substantially accurate statements, as conceded by [Swanson]. [Swanson] argues there are explanations for his case management issues, but that does not change the truthfulness of the statements made in the termination notice. [Swanson] also argues that the termination notice could have been misunderstood by third parties, who did not know that [Swanson] in fact resigned. However, that does not make it a "false statement." The Court notes that the termination notice was unsigned, and Oldenburger explained in his communications that [Swanson] resigned in lieu of termination.

We agree that Swanson has failed to show the falsity of the statements made by Oldenburger.

On appeal, Swanson claims that a jury should be allowed to consider the circumstances surrounding the disclosure, like his acrimonious relationship with Oldenburger, the discussion Kolacia had with Oldenburger, and the timing of the disclosures. But none of these circumstances changes the fact that the statements in the termination notice and disclosed with it are substantially true. For that reason, Swanson's defamation claims fail as a matter of law, and the district court properly granted summary judgment for the defendants.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Tabor, P.J., concurs; Greer, J., concurs specially.

**GREER, Judge** (concurring specially).

I concur in the majority opinion but write separately to offer additional support for the analysis over the open records violation that I found compelling. After the legislature amended Iowa Code section 22.7(11)(a)(5) in 2011, our court addressed the terms we examine today in this case. *Am. C.L. Union Found., Inc. v. Recs. Custodian, Atl. Cmty. Sch. Dist.*, No. 11-0095, 2011 WL 4950199, at *3 (Iowa Ct. App. Oct. 19, 2011). In this unpublished case we held that the new language (the same language we examine here) "only exempts from the confidentiality requirement 'a *final* disciplinary action' that resulted in the employee's discharge." *Id.* (emphasis added) (quoting 2011 Iowa Acts ch. 289, § 10). We then noted:

> The new law identifies as an exemption only this *single* form of disciplinary action—an action that results in discharge. Moreover, the *absence of an exemption for* all *disciplinary actions* reflects the legislature's intent to retain the confidentiality of the type of information sought in this case. Without clear evidence to the contrary, we presume the legislature's act in refining this statute is with knowledge of the "existing state of the law and judicial interpretations."

*Id.* (some emphasis added) (citation omitted). After our case was decided, an author addressed concerns over the release of an employee's personnel information under the code section:

> [A]n employee who otherwise would have sought a name-clearing hearing perhaps forwent that right on the assumption that the reason for his or her termination would remain confidential. Indeed, it is possible that the government employer was able to promise confidentiality, given the state of the law at the time, to the employee in exchange for either the employee's resignation or a forgoing of his or her right to a hearing. If that promise is breached by retroactively releasing records that could be damaging to the employee, the employee may have a cause of action for deprivation of due process.

Susan P. Elgin, *What Happens in Iowa Stays in Iowa: A Framework for Implementing Changes to State Open Records Laws*, 98 Iowa L. Rev. 1677, 1702–03 (2013).

In my view, the language found in the 2016 version of the Code—that disclosure is allowed only after a full and final discharge—did not address the "resignation in lieu of termination" option. And we assume that in 2017 the legislature balanced the competing policy interests and then determined that the door was now open for records where an employee "resigned in lieu of termination, was discharged, or was demoted as the result of a disciplinary action, and the documented reasons and rationale for the resignation in lieu of termination, the discharge, or the demotion." *See* Iowa Code § 22.7(11)(a)(5) (2017). Because the new law added demotions as well as a resignation in lieu of termination, it would appear the legislature expanded the disclosure requirements rather than clarifying the previous language. Allowing for notice to employees who might chose a resignation, the third endnote to the amended section 22.7 provided that disclosure under the new language would be limited to "*information placed in an individual's personnel records on or after February 17, 2017*." (Emphasis added.) Going forward, governmental workers would have knowledge that this material might now be produced and an employee might not resign but instead fight the adverse employment action. Thus, the majority decision correctly reverses the grant of summary judgment on the treatment of the disclosure under the open records act and allows for fair notice of the legislative changes to employees.