# IN THE SUPREME COURT OF IOWA

No. 11–0095

Filed July 27, 2012

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF IOWA, INC.**,

Appellant,

vs.

**RECORDS CUSTODIAN, ATLANTIC COMMUNITY SCHOOL DISTRICT**,

Appellee.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cass County, Richard H. Davidson, Judge.

A requestor under the Iowa Open Records Act appeals a decision granting the record custodian's motion for summary judgment finding the requested records exempt from production under the Act. **AFFIRMED.**

Randall C. Wilson of ACLU of Iowa Foundation, Inc., Des Moines, for appellant.

Brett S. Nitzschke and Emily K. Ellingson of Lynch Dallas, P.C., Cedar Rapids, for appellee.

**WIGGINS, Justice.**

A party requested information pursuant to Iowa Code chapter 22 (2009), Iowa's Open Records Act (Act), concerning the discipline of two school district employees after the school district disciplined them for performing a strip search of five students. The district court entered summary judgment in favor of the school district. The requestor appealed. On appeal, we hold that the disciplinary information sought is exempt from disclosure under Iowa Code section 22.7(11). Accordingly, we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

The facts are not in dispute. In August 2009, two employees of the Atlantic Community School District conducted a strip search of five female students in an attempt to locate $100 reported missing by another student. The incident received substantial media coverage. Initially, the school district superintendent announced the employees had conducted the search in accordance with school board policies. However, the superintendent later announced the school district would discipline the employees. In doing so, the superintendent did not disclose the names of the employees or describe the discipline.

The American Civil Liberties Union of Iowa Foundation (ACLU of Iowa) submitted an open records request to the school district's records custodian seeking the identities of the employees as well as the disclosure of the "specific consequences they received including duration or amounts of any penalties or consequences." The school district provided the names of the two employees, but did not describe the discipline imposed because it believed such information was exempt from disclosure under section 22.7(11).

The ACLU of Iowa filed a petition in the district court seeking an injunction ordering the school district to comply with its records request. The parties filed cross motions for summary judgment. The district court granted summary judgment in favor of the school district and dismissed the petition. It found the reports were exempt from disclosure under the Act as a matter of law. The court of appeals affirmed the decision of the district court. We granted further review.

## II. Standard of Review.

Generally, actions brought under the Act are in equity and reviewed de novo. *Gannon v. Bd. of Regents*, 692 N.W.2d 31, 37 (Iowa 2005). However, when a ruling under the Act involves summary judgment, our review is for correction of errors at law. *Id.*; *see also* Iowa R. App. P. 6.907.

## III. Analytical Framework.

The general assembly made the decision to open Iowa's public records. *See Des Moines Indep. Cmty. Sch. Dist. Pub. Records v. Des Moines Register & Tribune Co.*, 487 N.W.2d 666, 669 (Iowa 1992); *see also* Iowa Code § 22.2. In deciding which records are public, the general assembly created and fixed the limitations on disclosure. *See Des Moines Indep. Cmty. Sch. Dist. Pub. Records*, 487 N.W.2d at 669. Thus, our job is to construe the Act to determine whether the requested information is subject to disclosure.

The Act allows public examination of government records to ensure the government's activities are more transparent to the public it represents. *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999). In construing the Act, we have said its purpose is "to remedy unnecessary secrecy in conducting the public's business." *City of Dubuque v. Tel. Herald, Inc.*, 297 N.W.2d 523, 527 (Iowa 1980),

*superseded by statute on other grounds*, Iowa Code § 22.7(18) (1985), *as recognized in City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895, 897 (Iowa 1988). To that end, the Act's goal of disclosure seeks "[t]o facilitate public scrutiny of the conduct of public officers." *Howard v. Des Moines Register & Tribune Co.*, 283 N.W.2d 289, 299 (Iowa 1979); *accord Iowa Civil Rights Comm'n v. City of Des Moines*, 313 N.W.2d 491, 495 (Iowa 1981) ("The purpose of [the Act] is to open the doors of government to public scrutiny—to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act.").

The Act essentially gives all persons the right to examine public records. Iowa Code § 22.2 (2009). However, it then lists specific categories of records that must be kept confidential by those responsible for keeping records. *Id.* § 22.7. Accordingly, these records are exempt from disclosure. *Id.* The general assembly has amended this list numerous times over the years. Over sixty categories of records are currently exempt from disclosure. *See id.* § 22.7. We have previously determined the general assembly intended that we broadly interpret the disclosure requirement, but narrowly interpret the confidentiality exceptions. *DeLaMater v. Marion Civil Serv. Comm'n*, 554 N.W.2d 875, 878 (Iowa 1996). We have also stated, however, that "where the legislature has used broadly inclusive language in the exception, we do not mechanically apply the narrow-construction rule." *Id.*

The categorical exemption at issue in this appeal exempts from disclosure "[p]ersonal information in confidential personnel records of public bodies including but not limited to cities, boards of supervisors and school districts." Iowa Code § 22.7(11).

We have considered the meaning of the "[p]ersonal information in confidential personnel records" exemption in past cases challenging the denial of requests for disclosure by records custodians. *See Clymer*, 601 N.W.2d at 47–48; *DeLaMater*, 554 N.W.2d at 878–81; *Des Moines Indep. Cmty. Sch. Dist. Pub. Records*, 487 N.W.2d at 669–70. In these cases, we have developed the analytical framework to determine whether this exemption applies.

In *Des Moines Independent Community School District*, we determined performance evaluations contained in an employee's confidential personnel file were exempt from disclosure under section 22.7(11) based on the plain language of the statute. 487 N.W.2d at 670.[1] Because we determined the plain language of the statute exempted performance evaluations, we declined to apply a balancing test. *Id.* In reaching this conclusion, we acknowledged the plaintiff's policy arguments in favor of disclosure:

> We are not unsympathetic to the Register's public policy arguments favoring disclosure. The allegations made both by and against [an elementary school principal] led to her resignation and her financial settlement with the district. These are matters of public interest. The Register understandably seeks to inform the public about all details surrounding this payment of public funds.

---

[1]We discussed *Des Moines Independent Community School District Public Records v. Des Moines Register & Tribune Co.*, 487 N.W.2d 666 (Iowa 1992), in *DeLaMater*. *See DeLaMater v. Marion Civil Serv. Comm'n*, 554 N.W.2d 875, 879 (Iowa 1996). We stated, "Without explicitly employing a balancing test [in *Des Moines Independent Community School District*], we concluded the documents in question 'fell within the category of personal information in personnel records.' " *Id.* (quoting *Des Moines Indep. Cmty. Sch. Dist.*, 487 N.W.2d at 670). Our reading of *Des Moines Independent Community School District* indicates the court did not apply a balancing test and based its decision on the plain meaning of the statute. As discussed in this opinion, if the plain language of the exemption includes the category of information sought, we do not apply a balancing test.

*Id.* However, we directed the Register to make these arguments to the general assembly because the general assembly created the exemption. *Id.* Thus, when we find that a requested piece of information fits into a category of an exemption, we will not apply a balancing test. *Id.*

We have reiterated this rule in response to arguments that we must nonetheless determine whether the public's "right to know" outweighs the government entity's interest in privacy even where we find section 22.7 exempts information from disclosure. *See Gabrilson v. Flynn,* 554 N.W.2d 267, 273 (Iowa 1996) (" '[I]t is not our responsibility to balance competing policy interests. This balancing is a legislative function and our role is simply to determine the legislature's intent about those policy issues.' " (quoting *Ne. Council on Substance Abuse, Inc. v. Iowa Dep't of Pub. Health,* 513 N.W.2d 757, 761 (Iowa 1994))). In *Gabrilson,* we also addressed an argument that section 22.7 did not protect certain information because it was available for inspection by the public at the Library of Congress, the plaintiff had previously received a copy of it, and it had previously been made publicly available. *Id.* at 271. We summarily dismissed this argument finding no authority for the proposition that the Act removes a record from the exemption merely because it exists in the public domain, regardless of how it got there. *Id.* at 272.

We also analyzed section 22.7(11) in *DeLaMater.* There, we had to determine whether section 22.7(11) exempted the disclosure of the grading scale of a promotional exam given by the Marion Civil Service Commission and the raw scores of each examinee on each component of the promotional examination. *DeLaMater,* 554 N.W.2d at 877. We cited an American Law Reports annotation for the following test:

> [T]he courts will usually first examine the specific statutory provision involved to see if the statute delineates exactly what types of records or other information are considered private and thus subject to the public disclosure exemption. If, however, the particular record, report, or other information sought to be disclosed is not specifically listed in the personal privacy provision as a personal matter, or if the provision does not define those matters, the disclosure of which would constitute an invasion of personal privacy, the courts most often will apply general privacy principles, which examination involves a balancing of conflicting interests—the interest of the individual in privacy on the one hand against the interest of the public's need to know on the other.

*Id.* at 879 (citations and internal quotation marks omitted).

In applying this test, we first tried to determine whether the requested information fit into the category of information exempt from disclosure under section 22.7(11). *Id.* Our review of the Iowa cases provided limited assistance. *Id.* We then looked to interpretations by other courts and reached the same conclusion. *Id.* at 879–80. Having determined that the materials sought were not the type of information our Act categorizes as private, we performed the balancing test.[2] *Id.* at 880–81.

---

[2]The annotation we cited in *DeLaMater* based its test on the fact that "[a] majority of state freedom of information laws include some form of privacy exemption, and, with few exceptions, the exemptions closely track the Federal Freedom of Information Act's sixth exemption." Andrea G. Nadel, Annotation, *What Constitutes Personal Matters Exempt from Disclosure by Invasion of Privacy Exemption Under State Freedom of Information Act*, 26 A.L.R. 4th 666, 670 (1983). The Iowa Open Records Act's privacy exemption does not track the Federal Freedom of Information Act (FOIA). FOIA's provision relating to personnel records exempts from disclosure "personnel and medical files and similar files the disclosure *of which would constitute a clearly unwarranted invasion of personal privacy*." 5 U.S.C. § 552(b)(6) (2006) (emphasis added). The exemption for personnel, medical, and similar files is qualified, and a court must determine whether disclosure of a document would constitute a "clearly unwarranted" invasion of privacy. *See id.* This language requires a balancing test. The Iowa Open Records Act does not have the qualifying language of FOIA. Therefore, we question whether Iowa even has a balancing test. However, because we decide this case without applying a balancing test, we will leave that question for another day.

Finally, we most recently considered section 22.7(11) in *Clymer*. There, we restated that when "a statutory exemption does not articulate precisely what records or information the legislature considers private, courts commonly apply [a balancing test] as a means of weighing individual privacy interests against the public's need to know." *Clymer*, 601 N.W.2d at 45. As in *DeLaMater*, we surveyed Iowa cases and cases from other jurisdictions to determine whether the records sought could be categorized as information considered private under the Act. *Id.* at 45–47. After determining the Act did not categorize the records under an exemption, we applied the balancing test. *Id.* at 47–48.

In summary, to determine if requested information is exempt under section 22.7(11), we must first determine whether the information fits into the category of "[p]ersonal information in confidential personnel records." We do this by looking at the language of the statute, our prior caselaw, and caselaw from other states. If we conclude the information fits into this category, then our inquiry ends. If it does not, we will then apply the balancing test under our present analytical framework.[3]

### IV. Application of Analytical Framework.

The ACLU of Iowa requested records or information describing the discipline imposed on two employees. Thus, we must first determine if the Act categorizes this information as "[p]ersonal information in confidential personnel records." Iowa Code § 22.7(11). Our prior caselaw is very helpful in making this determination. We concluded that

---

[3]This approach is consistent with our approach under the Iowa Public Employment Relations Act (PERA) to determine whether a proposed bargaining topic is a mandatory subject of collective bargaining. *See Waterloo Educ. Ass'n v. Iowa Pub. Emp't Relations Bd.*, 740 N.W.2d 418, 429 (Iowa 2007) (limiting the use of a balancing test to those situations in which a proposed bargaining topic cannot be categorized according to a specific term listed in section 20.9 of PERA).

performance evaluations contained in an employee's confidential personnel file were exempt from disclosure under the Act in *Des Moines Independent Community School District* without performing a balancing test. *See Des Moines Indep. Cmty. Sch. Dist.*, 487 N.W.2d at 669. There, we characterized the performance evaluations as "in-house, job performance documents exempt from disclosure." *Id.* at 670. Disciplinary records and information regarding discipline are nothing more than in-house job performance records or information.

Our conclusion is consistent with those of other courts that have considered whether disciplinary action is exempt from disclosure under their jurisdictions' open records acts. *See, e.g., Copley Press, Inc. v. Bd. of Educ. for Peoria Sch. Dist. No. 150*, 834 N.E.2d 558, 561 (Ill. App. Ct. 2005) ("Given its plain and ordinary meaning, a 'personnel file' can reasonably be expected to include documents such as . . . disciplinary records."); *Wakefield Teachers Ass'n v. Sch. Comm. of Wakefield*, 731 N.E.2d 63, 67 (Mass. 2000) ("It would distort the plain statutory language to conclude that disciplinary reports are anything but 'personnel [file] or information.' "); *Oregonian Publ'g Co. v. Portland Sch. Dist. No. 1J*, 987 P.2d 480, 484 (Or. 1999) (stating that " 'personnel files' would usually include information about . . . disciplinary matters or other information useful in making employment decisions regarding an employee"); *see also Pivero v. Largy*, 722 A.2d 461, 462 (N.H. 1998) (noting "personnel file" in department of labor regulations "means any and all *personnel records* created and maintained by an employer and pertaining to an employee including and not limited to . . . disciplinary documentations" (citations and internal quotation marks omitted)); *Swinton v. Safir*, 720 N.E.2d 89, 91 (N.Y. 1999) (noting that a record of disciplinary charges and their resolution was part of a personnel file).

Moreover, to suggest that a balancing test should be applied in this case undermines the categorical determination of the legislature and rewrites the statute. It also creates a logical problem. Can it be that discipline in employee A's personnel file may be treated differently than the exact same discipline in employee B's file, based on the degree of public interest? Can it be that identical discipline for the son or daughter of a public official, which might create something of media frenzy if released, is entitled to less protection under the statute than a child with a less public family background?

Under our prior caselaw and that of other jurisdictions, we can easily conclude that the plain language of the statute supports the exemption in this case. Accordingly, it is unnecessary to apply a balancing test. Therefore, we agree with the district court that section 22.7(11) exempts the information requested by the ACLU of Iowa from disclosure under the Open Records Act.

**V. Disposition.**

We affirm the judgment of the district court because we agree with the district court that the disciplinary records requested are exempt from disclosure under section 22.7(11).

**AFFIRMED.**

All justices concur except Cady, C.J., Waterman, and Mansfield, JJ., who dissent.

**CADY, Chief Justice (dissenting).**

I respectfully dissent. The majority opinion takes a step backward from the new age of open government in this state. It is a step in the wrong direction.

This case goes to the heart of why we have an open records act in this state: the expectation that government will be better suited to deal honestly and fairly with its citizens when its citizens have the ability to examine the records of government business. While our legislature understands that confidentiality is needed in some aspects of government work, the facts of this case reveal a substantial public justification for disclosure of the requested information. The exemptions enacted by our legislature were not designed to capture such circumstances. The public nature of the requested information in this case is supported by the facts. To defuse public criticism over an incident in a public school of public concern, the school district announced that two public employees would be disciplined for their conduct in connection with the incident. This public declaration, in the face of public concern and criticism over an initial response by the school superintendent, made it reasonable for the school district to also let the public know what discipline was imposed. The public did not just have an interest in knowing that discipline would be imposed, but also in knowing whether the discipline was appropriate and meaningful. In this context, the discipline was "public" from the moment it was announced and should have been disclosed pursuant to the Open Records Act. In this dissent, I will first explain why I believe the majority opinion is inconsistent with decades of caselaw. I will then discuss how the Open Records Act should have been applied to mandate disclosure in this case.

Over the last thirty-two years, we have developed a solid body of interpretive law to guide us in applying the "[p]ersonal information in confidential personnel records" exemption to the public's right to examine public records. *See* Iowa Code § 22.7 (11) (2009). This law has allowed our state to sort through the thicket of difficult and sensitive clashes between the individual privacy interests of personnel files on government employees and the competing right of the public to know. The majority now inexplicably dumps this law and unravels a long chain of past cases of this court in favor of an amorphous interpretive approach built on the premise that the operative statutory phrase we have been interpreting as a court over the last thirty-two years is now unambiguous, except when particular circumstances might render it ambiguous. This confusing approach is not only a dramatic shift that is inconsistent with the basic way courts develop and apply law, it is inconsistent with the way we define privacy in the law and the way our legal tests seek to draw principled lines. Additionally, it is an approach we specifically rejected long ago.

Within Iowa's declared policy of open government records, our legislature carved out numerous exemptions. One exemption is "[p]ersonal information in confidential personnel records." *Id.*

The phrase used by our legislature to articulate this exception is not without ambiguity. For example, "personal" can mean several different things. It can mean "of, relating to, or affecting a particular person." *Merriam-Webster's Collegiate Dictionary* 924 (11th ed. 2005). Or it can mean "relating to . . . an individual's . . . private affairs." *Id.* Under the first definition, anything in a confidential personnel record relating to a particular person would be covered by the exemption; under the latter, only *private* matters relating to that individual would be

covered. Until today, we have never adopted the first of these two definitions of "personal" in interpreting section 22.7(11). Otherwise, we would never have decided, as we did in past cases, that an employee severance agreement was subject to disclosure or that information about individual employees' sick leave and vacation was subject to disclosure. A review of these past cases clearly reveals the approach we have taken to best serve the purpose and intent of the statute.

Our first opportunity to interpret this exemption was in 1980, not long after the passage of the Iowa Open Records Act. In *City of Dubuque v. Telegraph Herald, Inc.*, we were called upon to decide if applications for an appointive city office were exempt from disclosure as "personal information in confidential personnel records." 297 N.W.2d 523, 526 (Iowa 1980) (internal quotation marks omitted), *superseded by statute on other grounds*, Iowa Code § 22.8, *as recognized in City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895, 897 (Iowa 1988). We first turned to the language of the statute and observed our legislature wrote the exemptions to be narrowly construed. *Id.* at 527. We also observed that our legislature did not exempt all personnel records, but only "confidential personnel records." *Id.* at 526. Moreover, we observed our legislature did not just exempt "confidential personnel records," but only "personal information" in confidential personnel records. *Id.* We indicated the "personal information" requirement revealed our legislature intended to exempt information "that the right of privacy would protect." *Id.* We then concluded that Iowa's "personal information" exemption is properly applied and interpreted by balancing the public interests served by disclosure against the private interests in protecting privacy, a test used by federal courts in "applying and interpreting" a similar exemption in the Federal Freedom of Information Act, 5 U.S.C. § 552(b)(6) (2006),

that protects information in personnel files from an unwarranted invasion of personal privacy. *Telegraph Herald*, 297 N.W.2d at 526–27. In adopting this test, we rejected the argument made by the city in the case that the "personal information" component of the exemption was our "legislature's effort" to apply "the *private* business practice of keeping employment applications confidential" to "*public* bodies." *Id.* at 527 (emphasis added). In other words, we rejected a categorical interpretation that "personal information" meant matters customarily kept confidential in private business. Thus, the approach adopted by the majority today of interpreting "personal information" only as it relates to a person was specifically rejected by our court in 1980.

Since *Telegraph Herald*, we have had several other opportunities to interpret this exemption and consider its application to the real-world environment. In 1992, we held that job performance evaluations of school employees contained in an investigation file were exempt from disclosure as "[p]ersonal information in confidential personnel records," but a settlement agreement was not similarly exempt as "personal information." *Des Moines Indep. Cmty. Sch. Dist. Pub. Records v. Des Moines Register & Tribune Co.*, 487 N.W.2d 666, 669–70 (Iowa 1992). In this case, a school district instituted an investigation into parent–teacher complaints against a school principal and accusations of racism and sexism by the principal. *Id.* at 667. The investigation was conducted by two separate investigative committees. *Id.* During the course of the investigation, the committees collected documents relating to the past performance of school employees. *Id.* at 670. The investigation was halted after a settlement was reached, but the Des Moines Register then sought disclosure of "all documents related to the administrative investigation," including job performance evaluations.

*Id.* at 668. It also sought disclosure of the settlement agreement. *Id.* at 669.

The majority reads *Des Moines Independent Community School District* to hold that job performance evaluations were categorically exempt as "personal information" and uses this conclusion to undermine the need for a balancing test. Yet, we were never asked to decide in the case if performance evaluations were personal information. Instead, the relevant dispute in the case over the performance evaluations, and the one we addressed and resolved, was whether the section 22.7(11) exemption was lost because the performance evaluations were located in an investigation file instead of the actual confidential personnel files. *Id.* at 670. It is important to recall in the case that the Des Moines Register sought documents relating to the "administrative investigation." *Id.* at 668. Contrary to the conclusion of the majority, we only held "[t]he nature of the record is not controlled by its place in a filing system." *Id.* at 670. Thus, we said records that fall "within the category of personal information in personnel records" do not lose their protection when "deposited in investigation files." *Id.* We did not engage in a balancing test because the issue of whether performance evaluations fell within the exemption was not raised on appeal. The majority has misread our prior case, and it is unfair to use the case as authority for its position that the balancing test is not used to determine if the section 22.7(11) exemption applies. In fact, we specifically applied the balancing test in the case to decide if the settlement agreement was "personal information in a confidential personnel record." *Id.* at 669. We noted the competing public and private characteristics of the settlement agreement, but found the balance weighed in favor of disclosure. *Id.* Without question, the

balancing test continued as our law following our decision in *Des Moines Independent Community School District.*

We next considered the section 22.7(11) exemption four years later in *DeLaMater v. Marion Civil Service Commission*, 554 N.W.2d 875 (Iowa 1996). In that case, we were called upon to decide if civil service examination results were exempt as " 'personal information in confidential personnel records.' " *DeLaMater*, 554 N.W.2d at 878 (quoting Iowa Code § 22.7). We found the subject of test scores implicated both privacy and public interests, but that public interests supported disclosure when the scores would be disclosed without identifying the name of the test taker. *Id.* at 880. Importantly, we not only applied the balancing test to reach the result, we reviewed the background and importance of the balancing test in construing the exemption. *Id.* at 879. We observed that, when the legislature does not precisely delineate the types of information considered private and thus exempt from disclosure,

> "the courts most often will apply general privacy principles, which examination involves a balancing of conflicting interests—the interest of the individual in privacy on the one hand against the interest of the public's need to know on the other."

*Id.* (quoting Andrea G. Nadel, Annotation, *What Constitutes Personal Matters Exempt from Disclosure by Invasion of Privacy Exemption Under Freedom of Information Act*, 26 A.L.R.4th 666, 670–71 (1983)). We also specifically observed that our legislature did not list examples of "personal records" or define the term, which rendered the balancing test necessary to interpret the legislature's meaning of "personal information." *Id.* at 879.

Finally, we had an opportunity three years later to consider if a city worker's sick leave compensation and usage fell within the section 22.7(11) exemption in *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42 (Iowa 1999). We again observed that section 22.7(11) does not precisely articulate what information the legislature considers private. *Clymer*, 601 N.W.2d at 45. We also cautioned that precedent is of little assistance and further recognized that the role of the court was to decide if information personal to the employee and placed in a confidential personnel file was intended by the legislature to remain confidential. *Id.* As a result, we found the balancing test was required given the "ambiguity" of the statute. *Id.* at 47. In applying those tests, we held the compensation allocated to named employees was not exempt as long as medical conditions or professional evaluations were not disclosed. *Id.* at 47–48. Otherwise, we held the address, gender, and birthdate information was exempt. *Id.* at 48.

In short, we have consistently applied a balancing test to determine whether a record qualifies as "[p]ersonal information in confidential personnel records" under section 22.7(11). The majority "question[s] whether Iowa even has a balancing test," but elects to "leave that question for another day." Yet, there is no real question that the majority has overruled *Clymer*, *DeLaMater*, *Des Moines Independent Community School District*, and *Telegraph Herald*.

The majority wants the court to follow *Gabrilson v. Flynn*, 554 N.W.2d 267 (Iowa 1996), claiming it supports the notion that the balancing test is not used when the information at issue is the type commonly viewed in the world outside of government as confidential. Yet, not only did we specifically reject such an approach in *Telegraph Herald*, the majority's characterization of the *Gabrilson* holding is

misplaced. In *Gabrilson*, we only held the balancing test is not used to interpret those exemptions that identify the information with precision. 554 N.W.2d at 273. The rationale for this holding is that the legislature has already engaged in a balancing test when it specifically identifies the information sought to be exempt, making it inappropriate for courts to further apply the balancing test. *Id.* Importantly, *Gabrilson* dealt with the examination exemption under section 22.7(19), which we found was a precise delineation that needed no balancing test to determine its meaning. *Id.* at 272; *see also* Iowa Code § 22.7(19) ("Examinations . . . to the extent that their disclosure could reasonably be believed by the custodian to interfere with the accomplishment of the objectives for which they are administered."). The approach we took in *Gabrilson* was the same we recognized in broadly discussing the balancing test in *DeLaMater*. The balancing test is necessary when the legislature has not specifically listed the information sought to be exempted under a personal privacy exemption. *DeLaMater*, 554 N.W.2d at 879. Thus, it is inappropriate to read *Gabrilson* to reject the necessity of a balancing test under our exemption for "[p]ersonal information in confidential personnel records." *See* Iowa Code § 22.7(11). Moreover, we made it clear in both *DeLaMater* and *Clymer* that our legislature did not define personal information or list any specific examples that would allow the exemption to be applied without balancing the competing interests. If our prior cases have any meaning, it is that the balancing test is necessary to interpret the phrase "personal information." *Gabrilson* clearly does not support the position of the majority, but is consistent with our line of past cases.

As a result, we have built thirty-two years of jurisprudence concerning section 22.7(11) with the aid of a balancing test. During

these three decades, our legislature never disagreed with our interpretive approach by amending the statute to abandon the balancing test. Recently, the legislature did amend section 22.7(11) to limit the exemption to records of "identified or identifiable individuals" and to specifically except certain types of records from the exemption, including the records concerning the discharge of an individual as a result of the final disciplinary action.[4] *See* 2011 Iowa Acts ch. 106, § 10 (codified at

---

[4]Section 22.7(11) now reads:

> 11. *a.* Personal information in confidential personnel records of government bodies relating to identified or identifiable individuals who are officials, officers, or employees of the government bodies. However, the following information relating to such individuals contained in personnel records shall be public records:

> (1) The name and compensation of the individual including any written agreement establishing compensation or any other terms of employment excluding any information otherwise excludable from public information pursuant to this section or any other inapplicable provision of law. For purposes of this paragraph, "*compensation*" means payment of, or agreement to pay, any money, thing of value, or financial benefit conferred in return for labor or services rendered by an official, officer, or employee plus the value of benefits conferred or services rendered by an official, officer, or employee plus the value of benefits conferred including but not limited to casualty, disability, life, or health insurance, other health or wellness benefits, vacation, holiday, and sick leave, severance payments, retirement benefits, and deferred compensation.

> (2) The dates the individual was employed by the government body.

> (3) The positions the individual holds or has held with the government body.

> (4) The educational institutions attended by the individual, including any diplomas and degrees earned, and the names of the individual's previous employers, positions previously held, and dates of previous employment.

> (5) The fact that the individual was discharged as the result of a final disciplinary action upon the exhaustion of all applicable contractual, legal, and statutory remedies.

> *b.* Personal information in confidential personnel records of government bodies relating to student employees shall only be released pursuant to 20 U.S.C. § 1232g.

Iowa Code § 22.7(11) (Supp. 2011)). Yet, the amendment limiting the personnel file exemption to records of identified or identifiable individuals does not change the need for the balancing test to resolve the continuing ambiguity in the phrase "personal information." Obviously, if an individual cannot be identified by a document in a confidential personnel file, there is no individual privacy concern in the document. Thus, the amendment to limit the exemption to identified or identifiable individuals merely reveals a privacy interest is implicated only when an identified or identifiable individual is involved. When an individual is identified, the exemption applies and a balancing test will be needed to weigh the individual interest with the public interest, just as before. Furthermore, the addition of exceptions to the exemption merely eliminates the balancing test for certain types of records delineated by the legislature as specifically excluded from the exemption. The amendment reveals our legislature did precisely what our cases have been saying—exemptions that are specific and clearly discernible are applied without a balancing test. *See DeLaMater*, 554 N.W.2d at 879 (noting the balancing test is not used when an exemption is described in the statute with precision). Yet, for those records not excluded, the balancing test is still needed to resolve the ambiguity of what constitutes "personal information." *Id.*

After thirty-two years of consistent law to the contrary, the majority concludes the term "personal information" is actually clear, precise, and specific, which enables courts to decide what information in a confidential personnel file is exempt as "personal information" by doing nothing more than looking at the information and deciding it is "personal." Notwithstanding, it apparently attempts to keep the balancing test in reserve to use in the more difficult cases when the result might not be so readily apparent. While the majority attempts to

eliminate the need for any standard in normally applying the "[p]ersonal information in confidential personnel records" exemption, in truth, any application of the phrase "personal information" to particular facts necessarily balances personal interests against public interests. While some conclusions may be easier to reach than others, the balancing test is still applied to the thought process, even if subtly, because the balancing test is the only principled way to distinguish between personal information and public information.

The majority also seeks to support its conclusion that disciplinary records in a person's confidential personnel file are "personal information" on their face because such records are nothing more than personal job evaluations that were conceded by the parties to be "personal information" in *Des Moines Independent Community School District.* Yet, the majority makes this declaration without any explanation. Even conceding that job performance evaluations would normally be "personal information" under a balancing test, a vast difference exists between past job performance evaluations and the publicly announced job discipline in this case. Job performance evaluations normally address very personal and intimate information relating to an array of strengths and weaknesses found at the core of a person's character and personality. Discipline imposed by a supervisor, on the other hand, reflects a judgment by the supervisor about an incident of wrongdoing by the person. While both types of information have some privacy interests, performance evaluations of government employees are much more personal, while discipline of government employees implicates more public interest. Moreover, the discipline in this case was imposed only after an incident of wrongdoing was made public, and it followed a public clamor for disciplinary action. The school

superintendent publicly announced that discipline *would be* imposed so that the public would be protected, but expected the public to trust him that the discipline imposed was sufficient and appropriate instead of describing the nature of the discipline.  These facts made the discipline a public matter.[5]  The two situations found by the majority to be the same could not be more different.  As the balancing test clearly demonstrates, the discipline imposed by the school superintendent in this case was not exempt under section 22.7(11).  The factors considered under the balancing test support this conclusion.  *See Clymer*, 601 N.W.2d at 45 (identifying five factors to weigh the individual privacy interests against the public's need to know in deciding what information falls within the "personal information" exemption).

The first factor used in the balancing test considers the public purpose of the party requesting the information.  A substantial purpose for the information weighs in favor of the public's need to know.

The arguments of the parties teed up this factor.  The ACLU Foundation of Iowa believed the public needs information about the discipline imposed in this case to be better prepared to scrutinize the adequacy of the school's response to the misconduct and better assure accountability for wrongdoing directed toward students by school staff. The ACLU Foundation of Iowa also asserted the discipline involved a subject—school strip searches—in which the public maintains a strong interest.  The school district responded that the public purpose in knowing the discipline is diminished because the adequacy of the

---

[5]There is nothing inherently private about discipline.  It can be public.  For example, in our attorney disciplinary system, we impose a "public reprimand" as the sanction for certain ethical infractions.  *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Denton*, 814 N.W.2d 548, 549 (Iowa 2012).

discipline imposed cannot be properly assessed by the public without further disclosure of the specific underlying facts of the incident.

In general, our law recognizes a legitimate public concern over the discipline imposed for wrongdoing by a public employee. *See The Hawk Eye v. Jackson,* 521 N.W.2d 750, 754 (Iowa 1994) (recognizing a substantial public concern in the discipline of police officers). This concern is tied in with the needed public trust in all aspects of government, including public schools. In particular, it includes the extent and manner that students are searched by school officials. *See* Iowa Code § 808A.2(4)(*a*) (prohibiting strip searches of students by school officials). If adults fail to protect children, children will not be protected. Moreover, without adequate discipline for wrongs perpetrated by adults against children, the wrongdoing continues. Clearly, the public concern in this case is legitimate. While a complete understanding of discipline needs context, the imposition of discipline normally implies wrongdoing, and knowledge of the discipline can give understanding to the predicate wrongdoing. Consequently, I would conclude the subject of this case is a matter of legitimate public concern and the information sought by the ACLU Foundation of Iowa is proper.

The second factor is whether the public purpose can be accomplished without disclosure of the information. Individual privacy interests weigh against disclosure when the public purpose can be met without disclosure.

In this case, the public cannot assess the seriousness in which the school district treated the search of the students without knowledge of the discipline. The public has been given knowledge of a disconcerting incident, but has no ability to resolve its concern without knowledge of

the discipline. Consequently, this factor weighs in favor of disclosing the information.

The third factor is the scope of the request. Generally, a narrow or limited request would weigh in favor of disclosure because the intrusion into the individual privacy interests would be minimized. *See DeLaMater*, 554 N.W.2d at 880 (disclosing test scores without disclosing individual names of test takers). In this case, the ACLU Foundation of Iowa only sought disclosure of the nature and scope of the discipline, not the underlying personal information. Thus, the scope of the request weighs in favor of disclosure.

The fourth factor is whether alternative sources for obtaining the information exist. If multiple sources of the requested information are available, individual privacy interests would be minimized. Consequently, the existence of multiple sources of information supports disclosure.

Like all the factors, the availability of alternative sources for obtaining the information is considered to balance the interests between individual privacy rights and the public's need to know. *Clymer*, 601 N.W.2d at 45. The sources of disclosure in this case appear to be very limited. The school district only argued the individual employees would be the alternative source.[6] Thus, the factor would weigh in favor of protecting the individual privacy right.

The final factor is the gravity of the invasion of personal privacy. A substantial invasion of personal privacy would weigh against disclosure.

---

[6]Although the individual employees are the only alternative source of the information, it is interesting to note that they never intervened in this action nor otherwise asserted an objection to the disclosure of their discipline.

In this case, the seriousness of the invasion is minimized by the limited request for information. Additionally, the public has been informed of the incident through news reporting sources, and the school district released the names of the two staff members who were subjected to discipline. Thus, the disclosure of the discipline at this point would not invade the personal privacy of the individual staff in the same manner as it would if his or her name had not already been disclosed. The names of the individuals involved in the discipline have already been associated with the event, and the ACLU Foundation of Iowa only requested that the discipline imposed be disclosed. Our legislature has specifically instructed that "free and open examination of public records is generally in the public interest" even if it results in "embarrassment" to others. Iowa Code § 22.8(3). This admonition applies not only to the individual privacy interest, but also to the school district. Any embarrassment or other negative response visited on the school district as a result of the disclosure of its discipline is not a factor to consider.

Applying the five factors, I would conclude the district court erred in granting summary judgment for the school district and failing to grant summary judgment for the ACLU Foundation of Iowa. The factors weigh in favor of disclosing the discipline imposed by the superintendent of the school district. The factors reveal our legislature did not intend the discipline imposed on school employees for conducting a strip search of female students in a gym locker room to be exempt from disclosure under section 22.7(11).

Without the balancing test, courts will only be able to apply the section 22.7(11) exemption through their own personal assessment of the personal nature of the information at issue, divorced from any legitimate public need for the information. The goal of transparency in government

will surely be thwarted by those in government who, in the face of public criticism over the handling of employee misconduct concerning matters of legitimate public interest, will be able to quell public discourse and end controversies over employee misconduct of public concern with no public scrutiny by simply announcing that discipline has been imposed. Thus, the public will have no means to measure the appropriateness of the government's response to misconduct in matters of legitimate public interest. This approach is a return to the government of the past and a danger to our future.

Waterman and Mansfield, JJ., join this dissent.